UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

HAWK LOGISTICS, LLC,[1]                              **Case No. 23-18059-LMI**

Debtor-in-Possession.                                Chapter 11

_____/

## **PLAN OF REORGANIZATION OF HAWK LOGISTICS, LLC.**

**Submitted on January 2, 2024 by:**

ERIC J. SILVER, ESQ.
Florida Bar No. 57262
esilver@stearnsweaver.com
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

*Counsel for debtor-in-possession*

---

[1]The Debtor's principal place of business is 7601 E Treasure Dr., Suite PH118, North Bay Village, FL 33141. The last four digits of the Debtor's tax identification number are 1848.

## <u>TABLE OF CONTENTS</u>

**Page**

ARTICLE I - SUMMARY AND BACKGROUND ........................................................ 1

ARTICLE II - DEFINITIONS ............................................................................... 2

ARTICLE III - TREATMENT OF ADMINISTRATIVE EXPENSE  CLAIMS AND
                PRIORITY TAX CLAIMS ........................................................ 5

ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLAIMS AND
              INTERESTS UNDER THE PLAN ............................................. 5

ARTICLE V - ALLOWANCE AND DISALLOWANCE OF CLAIMS .................................... 12

ARTICLE VI - PROVISIONS FOR EXECUTORY  CONTRACTS AND UNEXPIRED
              LEASES ...................................................................... 12

ARTICLE VII - MEANS FOR IMPLEMENTATION OF THE PLAN ..................................... 13

ARTICLE VIII - DISCHARGE AND EFFECT OF CONFIRMATION .................................... 13

ARTICLE IX - OTHER PROVISIONS ..................................................................... 14

## <u>EXHIBITS</u>

<u>**Exhibit A**</u> **– Liquidation Analysis**

<u>**Exhibit B**</u> **– Projected Financial Information**

<u>**Exhibit C**</u> **– List of Creditors to be Paid Pursuant to the Plan**

## ARTICLE I - SUMMARY AND BACKGROUND

1.01    <u>Introduction</u>. This is the Plan of Reorganization (the "<u>Plan</u>") under Subchapter V of Chapter 11 of the Bankruptcy Code of Hawk Logistics, LLC. ("<u>Debtor</u>"). Creditors will receive payment from the Debtor from the cash flow of the Debtor's operations for a period of three (3) years.

This Plan provides for one class of priority claims, eight classes of secured claims, one class of general unsecured claims, and one subordinated unsecured claim. General unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 8 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors should refer to Article IV of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

1.02    <u>Description and History of the Debtor's Business</u>. The Debtor is a freight logistics company specializing in providing comprehensive transportation and supply chain solutions to businesses across various industries. The Debtor helps businesses to optimize their supply chains, streamline operations, and achieve their strategic objectives through seamless integration, enhanced visibility, and reliable performance throughout the supply chain ecosystem.

The Debtor owns its fleet, consisting of 83 trucks, 75 of which are 2019 model years or newer. The Debtor serves customers ranging from William Sonoma, a provider of luxury household goods to Hampton Farms, and a prominent peanut farm and distributor.

The Debtor's business was able to thrive throughout the COVID-19 pandemic due to increased demand for shipping and delivery services. However, the pandemic also created a swell in competition that the Debtor was unable to fend off once demand waned and interest rates rose. Making matters worse, the war in Ukraine put pressure on key expenses; namely oil and gas.

Creditors have through December 11, 2023 to file claims; however, the Debtor scheduled claims that the Debtor believes are non-objectionable, and after reclassifying certain claims to priority and/or secured status, the Debtor estimates that the total amount of allowed general unsecured claims is **$3,167,379.14**. By this Plan, the Debtor will be restructuring these obligations, such that the Debtor can remain viable as a going concern.

1.03    <u>Liquidation Analysis</u>. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **<u>Exhibit A</u>**.

The estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's property. The liquidation value of the Debtor's assets as of the

date of the filing of this Plan is **$0.00**. The Debtor's Initial Schedules and Statement of Financial Affairs was filed on October 23, 2023 [ECF No. 55].

After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of **$0.00** if this case were converted to a Chapter 7 liquidation. As such, creditors are receiving in this Plan more than what they would receive in a hypothetical Chapter 7 proceeding.

1.04    <u>Ability to Make Future Plan Payments</u>. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information as **Exhibit B**. The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for the period described in 11 U.S.C. § 1191(c)(2) (after payment of all amounts under this Plan, as well as all operating expenses) of $253,390.34. The final Plan payment is expected to be paid in the first quarter of 2027. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

1.05    <u>Projected Recovery of Avoidable Transfers.</u> The Debtor has analyzed its books and records and does not believe that any avoidable transfers exist that would generate a recovery for the bankruptcy estate. To the extent that any creditors and third parties were listed on the Debtor's Statement of Financial Affairs, Exhibit 3 [ECF No. 55], such payments were either payments to perfected lien creditors or payments made in the ordinary course of business or financial affairs of the Debtor and the respective transferees. As such, the Debtor does not intend to pursue preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code.

## <u>ARTICLE II - DEFINITIONS</u>

All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.01    <u>Administrative Claim</u> - means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation:  (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2.02    <u>Allow, Allowed, Allowance (or words of similar meaning)</u> - mean with respect to a Claim or equity interest against the Debtor that is:  (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined

or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the above-referenced bankruptcy case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03    <u>Assets</u> - mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature.

2.04    <u>Avoidance Actions</u> – means any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, 11 U.S.C. §§ 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.05    <u>Bankruptcy Code</u> - means Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

2.06    <u>Bankruptcy Court or Court</u> – mean the United States Bankruptcy Court for the Southern District of Florida.

2.07    <u>Bankruptcy Rules</u> - means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

2.08    <u>Claim</u> - means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.09    <u>Claimant</u> – means the Holder of a Claim.

2.10    <u>Class</u> - means a group of Claims or Equity Interests described in Article IV of this Plan.

2.11    <u>Confirmation Date</u> - means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.12    <u>Confirmation Order</u> - means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.13    Confirmation Hearing - means the hearing at which the Bankruptcy Court confirms the Plan.

2.14    Disputed Claim - means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.

2.15    Distribution - means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.16    Distribution Address - means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

2.17    Effective Date – means the date upon which the Confirmation Order becomes a Final Order.

2.18    Final Order - means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.19    First Payment Date – means the first day of the first month after the Effective Date of the Plan.

2.20    Holder - means the legal or beneficial Holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

2.21    Impaired - means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.22    Petition Date – means October 2, 2023.

2.23    Priority Claim - means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3)-(7).

2.24    Priority Tax Claim - means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

2.25    Secured Claim - means a Claim that is (i) secured by a valid and perfected lien on property in which the Debtor's estate has an interest, but only to the extent of the value of the

claimant's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a), or (b) subject to setoff under 11 U.S.C. § 553, but only to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C. § 553.

2.26 <u>Subchapter V Trustee</u> – means the individual serving in this bankruptcy proceeding as trustee pursuant to 11 U.S.C. § 1183.

2.27 <u>Undersecured Claim</u> - means the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

2.28 <u>Unsecured Claim</u> - means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE III - TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

3.01 <u>Unclassified Claims</u>. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes. However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

3.02 <u>Administrative Expense Claims</u>. Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e). If not otherwise specifically provided for herein, any other allowed administrative expense claims will be paid in full, plus statutory interest if applicable, over 36 months from the First Payment Date, in 12 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter. Administrative Expense Claims shall be filed on or before the deadline as set by the Court or otherwise pursuant to the Bankruptcy Code.

3.03 <u>Priority Tax Claims</u>. Each holder of an allowed priority tax claim will be paid in full on the First Payment Date.

## ARTICLE IV - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims<br><br>**Total claim amount: $84,649.56** | Unimpaired | Class 1 is comprised of all Priority Claims. Each holder of a Class 1 Priority Claim will be paid in full, plus statutory interest if applicable, over 36 months from the First Payment Date, in 12 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter. The Debtor shall pay any federal income (or other) taxes for the year 2023 (and thereafter) in the normal course, when such taxes become due and |

| | | owing. To the extent that any such amount is due and owing as of the Effective Date, then such amount shall be paid in full on the First Payment Date. |
|---|---|---|
| Class 2 – Secured Claim of Advanced Business Capital d/b/a Triumph Business Capital<br><br>**Total claim amount: $1,304,089.60**<br><br>**(secured = $1,304,089.60; general unsecured = $0.00)** | Unimpaired | Class 2, the Secured Claim of Advanced Business Capital d/b/a/ Triumph Business Capital ("Triumph"), is unimpaired by this Plan. Triumph has a blanket lien on essentially all assets of the Debtor, by virtue of a UCC-1 Financing Statement filed with the Florida Secretary of State on or about October 1, 2021, and the Order approving the Debtor's post-petition factor relationship with Triumph.<br><br>This claim will be paid pursuant to the underlying Factor Agreement and related agreement(s) executed by the Debtor and shall not be modified by virtue of this Plan. Triumph shall retain its lien on the Debtor's property until such time as the debt is fully satisfied. |
| Class 3 – Secured Claim of U.S. Small Business Administration<br><br>**Total claim amount: $166,767.00**<br><br>**(secured = $166,767.00; general unsecured = $0.00)** | Unimpaired | Class 3, the Secured Claim of the U.S. Small Business Administration ("SBA"), is unimpaired by this Plan. The SBA has a blanket lien on the Debtor's inventory and equipment by virtue of a UCC-1 Financing Statement filed with the North Carolina Secretary of State on or about June 28, 2020. This claim will be paid pursuant to the underlying loan document(s) executed by the Debtor and shall not be modified by virtue of this Plan. Any adequate protection payments made by the Debtor during the pendency of this case shall be applied retroactively to the underlying loan payment(s). The SBA shall retain its lien on the Debtor's property until such time as the debt is fully satisfied. |
| Class 4 – Secured Claim of Commercial Credit Group<br><br>**Total claim amount: $1,145,978.00**<br><br>**(secured = $1,145,978.00; general unsecured = $0.00)** | Impaired<br><br>Entitled to Vote | Class 4, the Secured Claim of Commercial Credit Group ("CCG"), is impaired by this Plan. CCG has a blanket lien on the Debtor's deposit accounts and investment property and liens on certain of the Debtor's trucks by virtue of: (a) UCC-1 Financing Statement filed with the Tennessee Secretary of State on or about January 12, 2023; (b) a UCC-1 Financing Statement with the Tennessee Secretary of State on or about January 31, 2023; (c) a UCC-1 Financing Statement with the North Carolina Secretary of State on or about December 21, 2020; (d) a UCC-1 |

6

| | | |
|---|---|---|
| | | Financing Statement with the North Carolina Secretary of State on or about January 12, 2023; (e) a UCC-1 Financing Statement with the North Carolina Secretary of State on or about February 1, 2023; and (f) a UCC-1 Financing Statement with the North Carolina Secretary of State on or about February 11, 2023.<br><br>The secured claim will be paid at the rate of 10.5% over four (4) years (48 months) in (a) three (3) monthly payments three payments of $39,021.00 commencing on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter, followed by (B) equal monthly payments over the remaining 45 months until the CCG Secured Claim has been paid in full. Payments shall be made to the address listed on CCG's Proof of Claim, or such other address provided by CCG to the Debtor's counsel.<br><br>Within twenty days after entry of an order confirming the Debtor's plan of reorganization, CCG shall provide Debtor with information concerning the secured claim and the equal monthly payments to include legal expenses and deducting recovered insurance proceeds.<br><br>CCG will retain its lien on the collateral, to the extent of its secured claim, during the time that payments are made. |
| **Class 5 – Secured Claim of BMO Harris Bank N.A.**<br><br>**Total claim amount: $934,015.00**<br><br>**(secured = $390,000; general unsecured = $544,015.00)** | Impaired<br><br>Entitled to Vote | Class 5, the Secured Claim of BMO Harris Bank N.A. ("<u>BMO Harris</u>"), is impaired by this Plan. This claim is secured by a lien on certain of the Debtor's truck(s).<br><br>The Debtor and BMO agree that the value of the lien collateral is $390,000.00. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $390,000.00, and as an allowed general unsecured claim in the amount of $544,015.00.<br><br>The secured claim will be paid at the rate of 10% over five (5) years, which will result in 60 equal monthly principal and interest payments commencing |

| | | |
|---|---|---|
| | | on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter. Payments shall be made to the address listed on BMO Harris's Proof of Claim, or such other address provided by BMO Harris to the Debtor's counsel.<br><br>Any adequate protection payments paid to BMO Harris shall apply to the payment of BMO Harris's Class 10 Unsecured Claim under this Plan, upon such time as this Plan is confirmed.<br><br>BMO Harris will retain its lien on the collateral, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $553,428.37, less any adequate protection payments made, will be paid in accordance with Class 10 General Unsecured Creditors below. |
| Class 6 – Secured Claim of Marlin Leasing Company<br><br>**Total claim amount: $302,318**<br><br>**(secured = $106,378.00; general unsecured = $195,940.18)** | Impaired<br><br>Entitled to Vote | Class 6, the Secured Claim of Marlin Leasing Company ("Marlin"), is impaired by this Plan. This claim is secured by a lien on certain of the Debtor's truck(s).<br><br>The Debtor asserts that the value of the lien collateral is $106,378.00. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $106,378.00, and as an allowed general unsecured claim in the amount of $195,940.18.<br><br>The secured claim will be paid at the rate of 7% over five (5) years, which will result in 60 equal monthly principal and interest payments commencing on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter. Payments shall be made to the address listed on Marlin's Proof of Claim, or such other address provided by Marlin to the Debtor's counsel.<br><br>Marlin will retain its lien on the lien collateral, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $195,940.18, will be paid in accordance with Class 10 General Unsecured |

8

| | | Creditors below. |
|---|---|---|
| Class 7 – Secured Claim of Pathward National Association<br><br>**Total claim amount: $302,843.85**<br><br>**(secured = $107,826.00; general unsecured = $195,017.85)** | Impaired<br><br>Entitled to Vote | Class 7, the Secured Claim of Pathward National Association ("Pathward"), is impaired by this Plan. This claim is secured by a lien on certain of the Debtor's equipment.<br><br>The Debtor asserts that the value of the lien collateral is $107,826.00. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $107,826.00, and as an allowed general unsecured claim in the amount of $195,017.85.<br><br>The secured claim will be paid at the rate of 7% over five (5) years, which will result in 60 equal monthly principal and interest payments commencing on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter. Payments shall be made to the address listed on Pathward's Proof of Claim, or such other address provided by Pathward to the Debtor's counsel.<br><br>Pathward will retain its lien on the lien collateral, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $195,017.85, will be paid in accordance with Class 10 General Unsecured Creditors below. |
| Class 8 – Secured Claim of Sumitomo Mitsui Banking Corporation<br><br>**Total claim amount: $609,673.00**<br><br>**(secured = $263,563.00; general unsecured = $346,110.60)** | Impaired<br><br>Entitled to Vote | Class 8, the Secured Claim of Sumitomo Mitsui Banking Corporation ("Sumitomo"), is impaired by this Plan. This claim is secured by a lien on certain of the Debtor's truck(s).<br><br>The Debtor asserts that the value of the lien collateral is $263,563.00. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $263,563.00, and as an allowed general unsecured claim in the amount of $346,110.60.<br><br>The secured claim will be paid at the rate of 7% over five (5) years, which will result in 60 equal monthly principal and interest payments commencing on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter. Payments shall be |

| | | |
|---|---|---|
| | | made to the address listed on Sumitomo's Proof of Claim, or such other address provided by Sumitomo to the Debtor's counsel. |
| | | Sumitomo will retain its lien on the lien collateral, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $346,110.60, will be paid in accordance with Class 10 General Unsecured Creditors below. |
| Class 9 – Secured Claim of Transportation Alliance Bank Inc.<br><br>**Total claim amount: $1,260,455.52**<br><br>**(secured = $477,886; general unsecured = $782,569.52)** | Impaired<br><br>Entitled to Vote | Class 9, the Secured Claim of Transportation Alliance Bank Inc. ("TAB"), is impaired by this Plan. This claim is secured by a lien on certain of the Debtor's truck(s).<br><br>The Debtor asserts that the value of the lien collateral is $477,886. Accordingly, this claim shall be reclassified as an allowed secured claim in the amount of $477,886, and as an allowed general unsecured claim in the amount of $782,569.52.<br><br>The secured claim will be paid at the rate of 7% over five (5) years, which will result in 60 equal monthly principal and interest payments commencing on the 20th day of the month following the effective date of the plan of reorganization and continuing on the 20th day of each month thereafter. Payments shall be made to the address listed on TAB's Proof of Claim, or such other address provided by TAB to the Debtor's counsel.<br><br>TAB will retain its lien on the lien collateral, to the extent of its secured claim, during the time that payments are made. The allowed undersecured claim, in the amount of $782,569.52, will be paid in accordance with Class 10 General Unsecured Creditors below. |
| Class 10 – General Unsecured Creditors<br><br>**Total Estimated Allowed General Unsecured Claims: $3,167,379.14** | Impaired<br><br>Entitled to Vote | Class 10 consists of all allowed general unsecured claims. The Class 10 General Unsecured Creditors shall share *pro rata* in total distribution in the amount of $253,390.34.<br><br>Any allowed general unsecured claimant scheduled to receive a total distribution of $1,000 or less shall be paid in lump sum on the First Payment Date. The |

| | | |
|---|---|---|
| | | Debtor estimates that the lump sum payment(s) will total approximately $10,000.<br><br>Any allowed general unsecured claimants scheduled to receive a pro rata share of a total distribution of more than $1,000 shall receive payment over three (3) years (36 months), in 12 fixed quarterly payments totaling $20,278.06 per payment, with the first payment due on the First Payment Date and continuing on the first day of every quarter (i.e. every three months from the First Payment Date) thereafter.<br><br>The estimated Class 10 General Unsecured Creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached **Exhibit C**. Unsecured creditors will be receiving a distribution of approximately 8% of their allowed claim(s), which is an amount in excess of what claimants would receive in a hypothetical Chapter 7 proceeding, in which case such claimants would receive 0.00%, as set forth in Exhibit A. |
| Class 11 – Subordinated Unsecured Claim of Federal Motor Carrier Administration<br><br>**Total claim amount: $19,844.00** | Impaired<br><br>Entitled to Vote | Class 11, the unsecured claim of the Federal Motor Carrier Administration, is subordinated to allowed unsecured claims as a fine which is not compensation for actual pecuniary loss, pursuant to 11 U.S.C § 726(4).<br><br>On the Effective Date, the Class 11 Claim shall be discharged and released and the holder of the Class 11 Claim shall not receive or retain any distribution, property, or other value on account of its Class 11 Claim. |
| Class 12 – Equity Security Holders of the Debtor | Unimpaired | Class 12 consists of all allowed equity interests in the Debtor, which includes interest in any share of preferred stock, common stock or other instruments evidencing an ownership interest in the Debtor.<br><br>All Equity Security Holders of the Debtor will retain their interest(s) in the Debtor as such interest(s) existed prior to the Petition Date, with Osmel Guzman retaining a 50% stock interest and Ismael Corzo retaining a 50% stock interest. |

4.02    Unclassified Claims and interests shall be treated as follows under this Plan:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Attorneys<br><br>(Stearns Weaver Miller) | The administrative professional fees and costs of the Debtor's attorneys are anticipated to be $150,000.00. Stearns Weaver Miller is holding the amount of **$50,000.00** in its attorney trust account, as unused fee advance/retainer. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs (net of the unused fee advance/retainer) shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Subchapter V Trustee<br><br>(Linda Leali) | The administrative professional fees and costs of the Subchapter V Trustee are anticipated to be $15,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |

## ARTICLE V - ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

5.02    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr.P. 9019.

## ARTICLE VI - PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Debtor assumes the executory contracts and unexpired leases identified on <u>Schedule 1</u> as of the Effective Date. Proposed cure amounts for all assumed executory contracts and leases are also set forth on <u>Schedule 1</u>. Counterparties to unexpired leases and executory contracts that are designated for assumption shall object to the assumption and/or proposed cure by no later than fourteen (14) days prior to the date set for confirmation by the Bankruptcy Court.

6.02    <u>Rejection of Executory Contracts and Unexpired Leases</u>. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the Confirmation Date, upon the Effective Date of this Plan with an effective date of rejection as of the Petition Date. <u>A proof of a claim arising from the rejection of</u>

an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.

## ARTICLE VII - MEANS FOR IMPLEMENTATION OF THE PLAN

The means necessary for the implementation of this Plan include the Debtor's cash flow from operations for a period of three (3) years. The Debtor's financial projections are attached as **Exhibit B**. The Debtor's financial projections show that the Debtor will have sufficient cash over the life of the Plan to make the required Plan payments and operate its business. The estimated cash on hand as of the First Payment Date of this Plan is $530,000.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for a period of three (3) years (after payment of all amounts under this Plan, as well as operating expenses) of $253,390.34. To the extent that the Debtor performs consistent with such financial projections, then such disposable income will be utilized by the Debtor in the form of cash reserves, in order to ensure that the Debtor will have sufficient cash over the life of the Plan to not only make the required Plan payments, but operate its business without any concern of illiquidity.

To the extent that the Debtor wishes to prepay any amounts due under this Plan, the Debtor reserves the right to do so without penalty. The Debtor, as reorganized, will retain and will be re-vested in all property of the estate, excepting property which is to be sold or otherwise disposed of as provided herein and executory contracts which are rejected pursuant to this Plan. The retained property shall be used by the Debtor in the ordinary course of its business.

## ARTICLE VIII - DISCHARGE AND EFFECT OF CONFIRMATION

8.01 <u>Discharge</u>. If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6). If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), if applicable, except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02 <u>Vesting of Assets</u>. Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.03 <u>Binding Effect</u>. Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the

Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.04    <u>Injunction Against Interference with Plan</u>. Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

8.05    <u>Other Effect(s) of Confirmation</u>. If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## <u>ARTICLE IX - OTHER PROVISIONS</u>

9.01    <u>Disbursing Agent</u>. If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by the Debtor, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.

A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee. The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    <u>Subchapter V Trustee</u>. If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated.  The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of such substantial consummation not later than 14 days after the Plan is substantially consummated.  If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    <u>Default of Plan Payment(s)</u>. Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, Eric J. Silver, Esq. (at <u>esilver@stearnsweaver.com</u>) and by U.S. Mail to Eric J. Silver, Esq., 150 West Flagler Street, Suite 2200, Miami, Florida 33130 (the "<u>Default Notice</u>"). The Debtor shall be afforded thirty (30) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default (the "<u>Cure Period</u>"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.  Upon filing an Affidavit of Default such party attesting to failure to cure said default, shall be entitled to pursue any remedies available to it

14

under the Bankruptcy Code. Notwithstanding any other provision in this Plan, the Bankruptcy Court shall retain jurisdiction to resolve any disputes concerning any defaults or alleged defaults under the Plan.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made." As such, if this Plan is confirmed under 11 U.S.C. § 1191(b), then in the event that the Debtor is in Default of this Plan, the Subchapter V Trustee shall provide all creditors and equity interest holders with notice of such Plan Default. In such instance, the remedies of any Claimant are limited to the remedies set forth in this paragraph. In the event of a Plan Default, the Debtor shall sell all of its tangible personal property (the "Sale"), and remit the proceeds of such Sale to the Holders of Allowed Claims. The Debtor shall have 120 days after the date of a Plan Default to effectuate the Sale or otherwise resolve such Plan Default to the satisfaction of the Claimant(s) and/or the Subchapter V Trustee. The Sale shall be conducted by a licensed auctioneer and the Debtor shall account for all proceeds of the Sale by providing such notice to all creditors and equity interest holders. After deducting any expenses directly associated with the Sale, the proceeds of the Sale shall be distributed as follows: (1) first, to any Claimants with valid Secured Claims against such personal property, in the order and priority as set forth pursuant to Florida law; and (2) second, in accordance with 11 U.S.C. § 726. The Sale and the distribution of the Sale proceeds shall be conducted by the Debtor without the necessity of further order of the Court. After receiving the appropriate proceeds from the Sale, each Claimant shall have no further claim against the Debtor. In the event of a Plan Default, in lieu of the Debtor's sale of such assets, Class 4, 5, 6 and 7 Secured Creditors may request that the Debtor turn over the subject collateral within thirty (30) days after the Debtor is in Default of this Plan, and the Debtor shall be required to turn over such collateral.

If this Plan is confirmed under 11 U.S.C. § 1191(a), then in the event that the Debtor is in Default of this Plan, then Claimants shall be entitled to any and all remedies available under applicable law, to collect the Distribution that each Claimant was entitled to under this Plan. In such case, the exclusive jurisdiction to enforce such Defaults under this Plan shall be in the Circuit Court in and for Miami-Dade County, Florida.

9.04    <u>Reservation of Right to Modify Plan Post-Confirmation</u>. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05    <u>Post-Petition Interest on Claims</u>. Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim, unless otherwise specifically set forth in ¶¶ 4.01 or 4.02 above.

9.06    <u>Delivery of Distributions and Undeliverable or Returned Distributions</u>. Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address. In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be

15

made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest. An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07    <u>Time Bar to Cash Payments</u>. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one –hundred-and-eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one-hundred-and-eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.10    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.11    <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.12    <u>Corporate Governance</u>. Equity interests of the Debtor shall be treated as set forth in 4.01 of this Plan. The Reorganized Debtor's chief executive officer shall be Ismael Corzo.

9.13    <u>Post-Confirmation Operation of Business</u>. Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code

and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code. The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court. Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

This Plan of Reorganization is dated January 2, 2024 and is hereby approved by the undersigned.

**Hawk Logistics, LLC**


By:     _/s/ Osmel Guzman_
        Osmel Guzman, Chief Financial Officer of
        Hawk Logistics, LLC

Submitted by:

ERIC J. SILVER, ESQ.
Florida Bar No. 57262
esilver@stearnsweaver.com
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

_Counsel for debtor-in-possession_